May it please the court, my name is Kimberly Elbrow and I'm here on behalf of the appellant Mr. Gary. Mr. Gary's issue which he raised in his original brief is whether sentencing guideline 2k2.1b6b applies in his case. For that four-level enhancement to apply Mr. Gary must have used or possessed the firearm for which he was convicted in connection with another felony offense and here he was alleged to have been involved in possession with intent to distribute. I don't want to go over the briefs but I'll just highlight the facts that were found in this case and that was that. Let me ask you this question first. You've got two forms of relief. You got a heath claim and then you've got one just simply vacate. You want both of them or would you rather have one than the other? Well obviously the rehafe issue, depending on how this court decides that issue, if that issue is decided in the en banc block hard case, if it was determined that his conviction should be vacated because it was unconstitutionally made or an invalid plea, obviously he would want his conviction vacated and his case sent back down. However, as I indicated in the supplemental briefs, since he has the potential to have a four-level decrease in his sentencing guideline range and because he has already been in prison for a number of years and this case was originally scheduled for oral argument in September, we thought that going forward on the four-level increase would be prudent as well. I'm not sure that this court would or could, and obviously that's within your honors discretion, decide this case before the rehafe issue is decided and if that's going to come out in the block hard decision obviously that would have to be considered. But we could decide rehafe in this case. Yes, your honor, you could. I've got obviously I don't know the status of rehafe. Wouldn't that be best for your client? It would be if if you decided that this was a case. I would sort of like to hear your rehafe argument. Okay, yes, your honor. Well, I don't know if I can make this argument as well as Mr. Carpenter did on behalf of Mr. Lockhart. I tried my best to put everything in the supplemental supplemental briefing so without reiterating the whole brief as I'm sure your honors have already read it, I would just say that we would submit that it is a structural error because he, no one knew this case, even Mr. Geary's attorney could not have advised him that he may have a defense to the element that rehafe now says is part of a 922g conviction and that is knowledge of his felony status. He wasn't put on notice by the indictment and even going further back the grand jury didn't even consider whether the government had presented evidence as to Mr. Geary's knowledge of his felony status. So going all the way back to the grand jury one of the fundamental rights. Because before rehafe it wasn't an element. That's correct. In this case Langley was on bond from this court but I've listed numerous circuits which had already determined that knowledge of felony status was not an element of the 922g offense. I think everyone in the federal system courts, prosecutors, public defenders, CJA attorneys, and defendants all operated under the assumption that knowledge of felony status was not something that had to be proved. At least in the state of South Carolina, I can't speak to other states, I'm sure they have similar quirks. But in the state of South Carolina there are offenses which are deemed felonies under federal law. They're called misdemeanors in state court. So there certainly are, I have clients sometimes that say well I only served 30 days even if the ultimate penalty could have been more than a year and a day. So there are any number of defenses that a defendant could bring up when he starts with 922g as far as prior convictions and whether that knowledge... If we didn't agree that this is structural error, and I think the government argues it's plain error, and you know what the last prong of plain error that it impacted his substantial rights, how do you get around that? Well obviously we believe that it would affect his substantial rights because he never, again going back to what I said about the grand jury, the grand jury could have found that there wasn't enough evidence of knowledge of his felony status to even charge him in the first instance. But even so, Mr. Gary pled under the assumption that knowledge of his felony status didn't have to be proved. So he was never afforded the opportunity to raise that as a defense to decide to plead guilty. So it goes to the core of a knowing involuntary guilty plea. And if you don't buy the structural error, it's probably irrelevant that he wouldn't have that knowledge of his... I'm sorry, I lost my train of thought there. The true nature of the offense, that's what I was trying to get out. That he didn't know the true nature of the offense against him because there was an entirely other element. If it's structural, it won't matter whether there was actual prejudice or not. Whether he would have still pleaded guilty or not, it still should be vacated and remanded. But I think that the plain error doctrine is met in this case because clearly an element wasn't ever told to him. It wasn't pled the indictment. It wasn't approved by a grand jury. And that's certainly something that would affect the integrity of the court system. Now, as far as... I don't have much more to add. If there are any other questions, I'll recape. And I can discuss the four level if that is something that the court wants me to discuss that he may... Yes, I would also like to hear that. My colleagues would. As I indicated, the four level increase was whether he was involved in possession with intent to distribute. And the facts as they were, he was present in a car where marijuana was ultimately found. But is that what we look to here? The Blount case says the purpose of this enhancement is to ensure the defendant receives a more severe punishment if he commits a separate felony offense, which is what you're arguing, or facilitates another person's commission of an offense involving a firearm. But even to facilitate another offense, he would have to have known that marijuana was there or that... He was smoking marijuana, wasn't he? But that's a simple possession case. That's not a felony. A felony... Because even the district court found that there were two charges... Did the record ever indicate what... He had a large amount of cash, as did Dixon. Dixon admitted his cash was with regard to what his cash was about. He did, Your Honor. At sentencing, he said there was a lot made at sentencing about... It was a mitigating factor, but about his involvement in a charity where he mentored young men in his neighborhood and they did car washes and things like that. Mr. Geary was also working at Little Caesars. And not everyone has a bank account, so he said at his sentencing that that cash was from the car washes and the charity and his paycheck from Little Caesars. There's nothing to refute that. That's the only thing in the record about the cash. And frankly, the cash is the only other thing besides the fact that he was present in a car. He had been present with Mr. Dixon related to count one, to which he also pled. But that was a simple possession amount of marijuana. Mr. Geary readily admitted that he has a problem with marijuana, that he had smoked marijuana daily for many, many years. But there is no evidence that he's ever dealt marijuana. There's no evidence that he had ever seen in the trunk of the car. There's no evidence that he knew Mr. Dixon had the marijuana. There's no... He didn't own the car. There's no evidence he had keys to the car. The only facts that were found by the district court are that he was present in the car with Mr. Dixon and he had a gun. And it appears, although there was some back and forth about facts, that Mr. Dixon and Mr. Geary were in front of a motel room. The cops drove around and they parked because they thought they smelled marijuana, according to the police reports. The officers didn't testify at sentencing. And when the officers came around, they found Mr. Dixon and Mr. Geary in the back seat of a car. And there was an opening to the back, I guess, to the trunk. So it appears that Mr. Geary put his gun through that way. And there's no evidence that he could see into the trunk or knew marijuana was back there at the time. And all the facts that were recited by the government below, and even some that the district court reviewed, connected those drugs to Mr. Dixon. Mr. Dixon said the drugs were his. He claimed the backpack where what they call distribution baggies were found. The marijuana cigarette was in Mr. Dixon's lap. There's not even anything in the record that says the officers saw Mr. Geary smoking marijuana that day. Therefore, I just, the facts as they are, and the facts as they were found by the district court, simply don't prove by preponderance of the evidence that he was engaged in possession of intent to distribute marijuana. And what fact do you think that the district court found that was sufficient, you said it was insufficient, the fact that the gun was found near the drugs? I believe that is where there was marijuana. There still has to be some knowledge, some intent on his part to distribute those drugs. Or to facilitate another person's commission of an offense. So I think the government's argument might be that he possessed the gun, or the gun was possessed in close proximity to the drugs and the money and everything, in order to facilitate Dixon's commission of distribution. That's correct. So what's your response to that? There's still no knowledge, there's no evidence that Mr. Geary had knowledge that Mr. Dixon was engaged in distribution of marijuana. Well, there's a test by the preponderance of the evidence more likely, so they're not, wouldn't it, could there be a scenario, one had a gun, one had drugs, they both knew they were in the gun and the drugs in the back. And that could be done without Geary having knowledge that there were drugs. Is that a reasonable interpretation? I'm not sure that I understand the question, are you saying? One had a gun, one had drugs, he knew that he had a prior conviction involving guns. The other guy obviously had some drug knowledge. So they just both stashed it back there simultaneously and Mr. Geary, could he argue that, I just didn't know that there were drugs in that bag. Well, I think he could argue that because I'm not even, I don't think there's any evidence that Mr. Dixon possessed those drugs and then simultaneously put them in the trunk. It appears that a woman who owned the car drove Mr. Dixon and Mr. Geary to this motel and Mr. Geary and Mr. Dixon for whatever reason were hanging out in front of the motel and then got to the car and Mr. Dixon and or Mr. Geary were smoking marijuana. But there's no evidence that Mr. Geary ever knew there were drugs in the trunk. When those drugs got in the trunk, those drugs could have been in the trunk when they picked up Mr. Dixon. So your argument is mere proximity with the drugs and the gun cannot be enough to meet the government's burden here? Correct. In this, in these circumstances where someone else was in the car and claimed everything that had to do the drug paraphernalia, the scales, the marijuana cigarette was in Mr. Dixon's lap, everything that had to do with the drugs was connected to Mr. Dixon and Mr. Dixon didn't testify, no one else testified, the owner of the car didn't testify. And the government would have to somehow connect that gun to Mr. Dixon's distribution crime. Correct. Or that he was doing it. Right. There was some conspiracy between Mr. Geary and Mr. Dixon that they had agreed to do this, that Mr. Geary, part of the reason he was there was to help facilitate Mr. Dixon with drug distribution, but there's just nothing, there is nothing that connects Mr. Geary to Mr. Dixon's drug distribution. Oh, I guess, what about, you don't think circumstantial evidence connects him? Not in these circumstances. I do not believe, I understand that circumstantial evidence can be used to make the connection, but here I don't think there was any circumstantial evidence to connect Mr. Geary to the drugs. He had the cash, there was an explanation for that, he read, I mean if you look at the first instance, the count one, he was convicted, I mean he was found with a gun and a small amount of marijuana. He admitted that both of those things were his, in his car. Here, there is nothing here, Mr. Geary didn't admit anything, there's no evidence that, there's no circumstantial evidence that's connected to that. And I see my time is up, unless you have further questions. Thank you, counsel, thank you Ms. Albrow. Ms. Richardson. May it please the court, Melissa Richardson for the government. The district court reasonably concluded that the defendant had knowledge that his firearm was being Your Honor, the district court made a reasonable conclusion based on the evidence that was in front of it. What's your, what's the strongest evidence the government presented to meet its burden? Yes, Your Honor, the strongest evidence that the government presented to meet its burden began with the proximity of the firearm in connection with the marijuana. The government presented evidence that in looking in trunk of this vehicle, the firearm was very near in proximity to the marijuana. In addition to the proximity of the firearm next to the marijuana, as the application of 14 talks about, both Mr. Geary and his cousin, Mr. Dixon, conveniently located themselves in the back seat of an empty car. They intentionally went into that back seat. We presented evidence that the armrest was raised, or excuse me, armrest was down, showing the access to the trunk. So the positioning of both Mr. Geary and Mr. Dixon, all within arm's reach of both the marijuana and the firearm, Your Honor, I believe is our strongest evidence. How does that show that Mr. Geary knew the marijuana was back there? Yeah, he knew the gun was back there because he put it back there. How, how is that evidence that he knew the marijuana was back there and that Mr. Dixon was engaged in distribution? Your Honor, I believe the evidence that Mr. Geary would have known the marijuana was back there is circumstantial based on, first, the proximity, as I already mentioned, but additionally, Your Honor, the district court didn't view this particular incident in isolation. The court at JA 85 talks about giving Mr. Geary the benefit of the doubt as the first stop, but not ignoring it, not ignoring that Mr. Geary would have knowledge as to what his cousin, Mr. Dixon, was involved in. In this case, our argument is that there was some joint criminal activity in that Mr. Geary, for the second time in five months, was being arrested with the same person, with the same drug, and also with a loaded firearm. Your Honor, in addition... Well, it's his cousin, so he probably spends a fair amount of time with him. Yes, Your Honor, in addition to spending a fair amount of time, I would assume, with his cousin, both Mr. Geary and Mr. Dixon admitted to being members of the same gang. Specifically, they both specified they were members of a local gang, a gang of only six to seven people. That's one more fact that was in the PSR that the district court adopted and used in coming to this common sense inference that Mr. Geary would have had knowledge that the marijuana was there. Is there any evidence in the records, what is the motif of the gang, what's their activities associated with the gang? That is not in the record. So, all we know now is the gang is no more than an association of people. That is correct, Your Honor. We know that they are related to the Bloods, the National Bloods Gang. We know generally about what the Bloods do, but in terms of directly answering your question... Then you do have some indication of what that connectivity might be in terms of activity, right? Yes, Your Honor. Well, let's assume, well, I'll give you that the judge found proximity. Should this case not be sent back for him to make specific findings about how he, how Geary knew there were drugs or that he had the gun to facilitate? Whereas the order seems to be solid about everything except proximity. Your Honor, I don't believe that the case needs to be sent back. I believe that district court was very much relying on that application note, which suggests almost an automatic presumption of the enhancement applying in a case where we have drug trafficking in a firearm. Specifically, I agree with Ms. Albro's point that there would seem to be some suggestion that Mr. Geary would need to know about the marijuana, but that would be in reference to proving the drug that we're talking about, a drug trafficking offense. Well, I mean, you might be confusing proximity test with 2D1.1 rather than the section that's applicable here. Your Honor, I'm specifically talking about the guideline here, 2K2.1B6B. Specifically, that application note was amended in a 2006 amendment to specify that when we have a drug trafficking offense, there's essentially this automatic or this presumption that the enhancement would apply. That guideline application note was specifically changed to draw out the importance of a drug trafficking offense or burglary as being an instance where there's just necessarily this inference that the firearm is being used in facilitation of the drug trafficking offense. Well, that's the point. No, you go ahead. Well, the Fourth Circuit makes it clear in case law that says drugs and guns go hand in hand. I mean, that's the law of our circuit. You know, whatever the wisdom that is, that's our precedent. But here, it's a little different, is because normally that arises in the sense that, well, I own the gun and I'm involved in activities, but there's nothing that really connects.  It comes hand in hand. But here, don't we have a question of, do we know what drug trafficking activity was in his presence? We know that the person who had the drug said, it's mine. That's mine. And it was in the trunk. How do we know his being in the backseat would give him knowledge of any drug trafficking possession with intent? You see what I'm saying? Yes, Your Honor. When they come together, don't you have a disconnected sense of ownership and activity here? Your Honor, I would bring up two factors to try and connect the ownership and the activity here. The first factor being something the district court relied on, which is the quantity of the marijuana. In this case, it was a large quantity such that the officers in the report talked about the overwhelming smell of the marijuana. The district court relied on that information to make the inference that if I'm in a car that strongly smells of this marijuana, perhaps there is a large quantity somewhere present. In addition to that, Your Honor. Weren't they smoking? Yes, Your Honor. There was also a blunt located in the vehicle. And he smoked frequently. So the odor of marijuana is probably not something that alerts him to, oh, there's a large quantity of marijuana in the trunk. There must be distribution going on. Yes, Your Honor. And the second factor that I would bring up, in addition to the quantity of marijuana, would be the fact that there was additional evidence that Mr. Gary and Mr. Dickson were acting in some sort of coordination or in concert with each other. Even in the record, it talks about their claiming ownership of the drugs and the firearm. Your Honor, specifically in watching the video of them claiming ownership, the officer is in jail unless somebody pipes up. Mr. Dickson immediately says, the marijuana is mine. And at which point, Mr. Gary says, I'll take the firearm. So, Your Honor, those are additional factors that would go to this coordinated effort, which would allow this court to make this inference. Is there a quote, I'll take the firearm? Or you're saying that's the... Excuse me, I misspoke. Mr. Gary's quote was, I'll take the gun, was his quote. He said, I'll take the gun. Yes. But so they cooperated with law enforcement and that's now some evidence being used against them? No, Your Honor. I would not assert that cooperation is being used against them. I brought up that point to say that they... Why do you hesitate to say that? 90% of the cases come through cooperation. Yes, Your Honor. I'm very grateful for cooperation. What I'm saying, I bring up that example to say that these two individuals were acting in coordinated, in coordinated efforts. That it appeared as though, based on the video, that they were acting in concert in how they chose to cooperate with law enforcement? Yes, Your Honor. Did the district court see this video? The district court did not review the video. Okay, then. And is the video in the record? The video is not in the record. Then maybe we go back to what Judge Floyd was suggesting, a remand for the district court to flesh out the record here. But before we get... We might not even get to sentencing if we vacate the indictment and the plea. So maybe we should hear you on that. Yes, Your Honor. I will move to Raheith if I just may add one more factor here. While the district court did not review the video, one fact the district court did review in determining this coordinated effort that I've been describing is two grown men exit a hotel and go sit in the back seat of a vehicle. Your Honor, I believe that's an important fact that would suggest they're sitting there for some reason other than comfort. Maybe to smoke. Perhaps to smoke, Your Honor. Or perhaps to have... And they saw law enforcement. Or perhaps to have easy access to the trunk, Your Honor, is the government's position. But you had a nefarious activity that would connect their wanting to secrete themselves smoking marijuana. Yes, Your Honor. So I believe that those are sufficient factors the district court used in making... Coming to that reasonable conclusion. I will move to the issue of Raheith. Your Honor, it's the government's position that this would not be plain error. Specifically, Mr. Gary spent 691 days in jail on a burglary second offense. Thus, he would have complete knowledge that he had spent time in jail in excess of a year. Such that I believe the First Circuit, Eighth Circuit, and the Ninth Circuit have been applying the same plain error standard. If the government can prove that there's... But that may be true, but the government has to have proved it in the first place. And set it out as an element in the indictment. Your Honor... And as a factual basis at plea. You would say that at a factual basis or in the indictment. Yes, Your Honor. You're correct. In light of Raheith, that is absolutely an element that we are setting out at the time of grand jury plea, etc. Now. Yes, Your Honor. What I'm saying is those cases relied upon by those other circuits. They found that it would not be plain error. If there was something else to show the defendant, you know you're a felon. What is that something else? In this case, it's 691 days that Mr. Gary spent in jail on a prior offense. So isn't that merging? Then you merge those two elements together. Then the fact of conviction then would automatically in every case accomplish the knowledge of status. Correct? No, Your Honor. What is it? You say it's conviction or was it incarceration? Which or both? Your Honor, he was incarcerated for 691 days. And what does that mean in terms of knowing that you're prohibited? Your Honor, in light of Raheith, what we now have to show. No, I know what you have to show now. Yes, Your Honor. In terms of plain error for him and that purpose is there. What would he have known? Because you're saying that I assume you're arguing that even though we didn't know that we have to prove a separate element, the facts in this case have suggested he did know. Yes, Your Honor. Right? I'm correct? Yes, Your Honor. So I'm asking you, how does being convicted and being incarcerated equate to I know I'm prohibited? Your Honor, I'm arguing that being convicted and being incarcerated for longer than a year would tell a defendant that I have served over a year in jail on an offense. And how does that tell him that he's prohibited? It tells him he's a felon. Your Honor, I believe Raheith requires us to show that he knows of the status that would bring him into being prohibited, not necessarily that he is. All they have to know is that he's a felon. He's convicted of a felony. Yes, Your Honor. That's what you think. That means he knows he's prohibited. Yes, Your Honor. I thought I may have misunderstood that he spent the 600 and something odd days for a burglary. Is that what you said? Yes, Your Honor. So how does that equate with the gun? Your Honor, I bring that up to say he would have knowledge that he was a felony, meaning he knows for a fact that he spent more than a year in jail. So he's presumed to know the law then? No, Your Honor. We just need to show that he knows the status that brought him in. He doesn't have to know he's prohibited? No, Your Honor. Oh, you're reading Raheith. So you're saying that they have to prove that he was convicted of a felony and that he knows he was convicted of a felony? Yes, Your Honor. But not that he knows that the result of being convicted gives him a status of a prohibited person? Yes, Your Honor. Oh, okay. Well, I see you. If you believe that's the case, then I guess I can't imagine a case that we have to do anything with, right? The only issue is whether it was 360 days and I thought it was just 360, but it turned out it was 366 and I didn't know I was a felon. Right. It comes down to that kind of nuance, for example, right? Yes, Your Honor. So the government in these cases now, in order to prove the Raheith element, is simply putting in evidence of incarceration beyond one year and that's it. The government's not going beyond and, oh, and here's the, when he was released on probation, document that he signed that says, and as a felon, you're prohibited from owning or possessing a firearm? Your Honor, that is absolutely the better evidence. That is, yeah, but that's not what the government is doing? We don't have that in Mr. Gary's case and so we're falling back on the amount of time that he did. Okay. What's your argument that, you're arguing plain error, but what if it is, how is it not structural error? How is this not a constitutional violation at its core? Your Honor, I fall back on my earlier response to say that if Mr. Gary already knew that he was, in fact, a felon, it wouldn't be a structural error for him to be sentenced on the basis of knowledge of being a felon. If he, under my argument, already knows he spent the over a year in jail, he should know. The indictment at the outset is invalid. If under rehab, the indictment is invalid. It doesn't have the element of knowledge of felony status in the indictment, does it? Maybe I have to look again. No, you're correct, Your Honor. It doesn't have that element in the indictment. But my argument is under rehab, it's not invalid. Perhaps Lockhart will state that it is invalid, but at this point. Or perhaps this case. Or perhaps this case, Your Honor. Unless there are further questions, I'll rest on my briefs. Let me make sure. Yes, Your Honor. Because make sure the governor's position is clear. For plain error analysis, it's the prejudice, no substantial right was implicated. That's what you, you take the, right? Yes, Your Honor. That's the prong of it. You concede error. We do not concede error. That's why I want to make sure. I want to make sure we know the structure, not structural, of your plain error analysis that you represent the government, because you represent the United States here. Yes, Your Honor. So you're saying, let's take the element of plain error. You know them, obviously, you can name them in your sleep. Go down the ones, I want to make sure the ones you concede, the ones you have argued. You know the fourth one, it's Olano. We don't worry about that one. Let's go for the one, two, three. It was an error? No, Your Honor. No, so we don't get to plain error anyway. So there's no error. We don't have to worry about any prejudice or anything like that, right? I would agree with that, Your Honor. Okay. So there's no error in not informing a person that, oh, I see. So you're saying that knowing, I think Raif at the Supreme Court said, knowing is required, and knowing would apply to both the possession and knowing their status. And you think that solely means that knowing that you're a felon, not the status that you're prohibited. Yes, Your Honor. Okay. And therefore, you think it's not structural error because... Go ahead. I think it's not structural error because, back to my argument, that he knew of his status as a felon. But structural error doesn't go to just the individual case, does it? We have to look beyond just this case. Yes, Your Honor. The question is, what does the decision in Raif do to the whole idea, the error itself being structural? Because you know if it's structural, then prejudice is not required. But you say there's no error anyway. I do, Your Honor. That's the way you deal with it. In other words, you've got to first... In either analysis, you have to first show error. And you say there's no error at all. Yes, Your Honor. Interesting. Okay. Go ahead, Natalie. You might finish. If there's nothing further, Your Honor, I will rest on my briefs. All right. Thank you. Ms. Alvaro, you have time remaining. Thank you, Your Honor. Just a few quick points. The government, throughout the briefing and below, relied on the first stop. The count one that I referenced earlier. If you don't mind, can you address the existential argument she makes and categorical one? That there's no error for plain error review or finding structural error. You don't get out of the box. No error. That's what she said. I heard that. I believe that there is error. The indictment failed to allege one of the essential elements of the offense. And as cited in Mr. Harry's supplemental brief, even when an error appears while the case is on direct review, it can be considered under the plain error review. And I think it's very clear that the error is that an element of the offense, 922G, was not pled in the indictment or ever told to Mr. Harry. Therefore, the error is now plain because the Supreme Court has indicated and we have reiterated that that is an essential element of a 922G conviction. Don't stop there. Go number three. Ms. Richardson didn't get to number three, but you are number three now. Go ahead. The error affects his substantial rights because Mr. Gary was never put on notice of what the government had to prove. But she said he was because their definition of the knowledge as to the status is the status that you are a felony. When you stay in prison 600 and some days, everybody knows that has to be a felony. Well, as I indicated in my opening argument, there are certain, I'm sure there are perks in every state's law, but in South Carolina in particular, there are all kinds of defenses that a defendant can bring up as to why he was in prison for that long. Maybe it was classified under state law as a misdemeanor, so he didn't understand it was a federal felony. In this particular case, it's JA111, with the burglary that she references, it does say that he was given credit for the 691 days of time served. It's unclear. To me, the way it reads is that he was sitting in jail waiting for his case to be adjudicated, which often happens in state court. Sometimes defendants plead guilty because they've been sitting in jail, they can't make bond, and the only way to get out is to plead. So we don't know whether he would have served the 691 days in jail if his case had been adjudicated more quickly. But let's assume he did. Is that enough? The government is arguing that is enough. Enough. I disagree that that is enough to show that he was convicted of a felony. And again, it's hard to think of all the possible excuses. It is enough to show he was convicted of a felony. Is it enough to show his knowledge of his prohibited status? No, I would disagree with that. I think rehafe itself, it was about a different prong of 922G, but about, I believe the circumstances were this student was told that his visa would be revoked, he was an illegal alien, that was his status, and he was told that that would happen, and he didn't do what he was supposed to, but he still was not presumed to have knowledge that that was his status. I think it's hard for me to stand up here and give you every eventuality of what could or could not be proof of whether there was knowledge of status, because we aren't sure yet of what the framework will be for proving that element. But I certainly don't think that the fact that someone spent X number over a year in jail would prove that status. I mean, it's a starting point. It's not the ending point, is your argument. Correct. And it's not, it's unclear from this record. Like I said, if he was in jail for 691 days, was that the sentence he got? Did he plead to something lesser that might have only had a 60-day maximum sentence, but he was given time served because that's the time he spent in jail? I mean, it's hard to argue on behalf of Mr. Gary and his knowledge of his felony status, because it's an incomplete record, because he didn't know below that he had to come up with these defenses. He didn't know that the government had to prove that element, so he didn't know, oh, maybe I do have a defense to that. I shouldn't plead guilty to this. And that's why it affects his substantial rights. Going back to Chief Judge Gregory's question for me to continue with complaint error analysis, and I think that in any circumstances when someone is convicted under a constitutionally infirm indictment, that it would certainly affect the integrity of the court, that it would go toward justice for someone to have their conviction vacated and for the case to be sent back so that any defendant could have the opportunity to fully argue all the elements of the offense and hold the government to their burden of proof if that's what the defendant chooses to do. There's one question. If we were to find, hypothetically, Ms. Richardson, if we were to find that this was structural, do you think that the court could have the option to get this case back and see whether or not, in fact, there was knowledge of the prohibited status or would it automatically give the option of withdrawing the plea and the right to have a plea of not guilty in a trial? Do you think that they would have the option to say, no, no, you don't get a new trial. We could first see whether or not you knew. Are you asking me? Yeah, absolutely. You call me Ms. Richardson. I'm Ms. Albert. I was just saying, hypothetically, Ms. Richardson, because I didn't want to make sure that we haven't decided that. I wasn't sure if you wanted her to answer. I apologize. No, we normally let you get to the podium. That would be a first for me. But anyway, apologies for the confusion. No, I do think that he should have the opportunity to have, if he so chooses, have his conviction vacated and begin anew, that he should be re-indicted with proper elements. So vacate the plea and dismiss the indictment and start over? Correct. And particularly if it's structural error. Because regardless of whether he would ultimately plead guilty again, the whole purpose of structural error is that that's irrelevant. It's a matter of it being a constitutionally infirm indictment from the beginning. And it's of such importance that it should be vacated. I see I'm out of time. Unless you have further questions? No. Thank you, Counsel. Thank you very much.
judges: Roger L. Gregory, Henry F. Floyd, Stephanie D. Thacker